'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID SINGUI, <br><br> Defendant | Case No. 2:12-CR-00851-CAS - 1 <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(C)(1)** |

I.  INTRODUCTION AND BACKGROUND

Defendant David Singui orchestrated and executed a fraudulent loan scheme that, over a four-year period, stole millions of dollars of home equity from approximately 50 unsuspecting vulnerable borrowers by preying on their fears of foreclosure during the 2007-2009 economic crisis. See Presentencing Report, ECF No. 259 ("PSR") at ¶¶ 19-69; see also Victims Statements, ECF No. 540. After pleading guilty to conspiracy to commit loan and wire fraud, loan fraud, aggravated identity theft, and tax evasion, Singui began serving a 94-month sentence—51 months shorter than the 145-month sentence recommended by the government—on October 19, 2016. See ECF No. 464 at 5. The Court previously agreed to release Singui on bond pending appeal last year from February

11, 2020 to August 9, 2020 to allow Singui to care for his minor children during a family medical emergency affecting one of his sons. See ECF Nos. 492, 506. The appeal was dismissed, and Singui is now serving his sentence at the Federal Metropolitan Detention Center in Los Angeles ("MDC"). Prior to the application of any good time credit, Singui is projected to be released on January 6, 2024.

Since Singui returned to prison, more than 2,800 inmates and more than 260 BOP staff members nationwide have tested positive for the highly-contagious novel coronavirus known as COVID-19 nationwide. See Bureau of Prisons, COVID-19 Cases (available at https://www.bop.gov/coronavirus) (accessed May 12, 2020). More than fifty inmates across the country have died from the virus. Id. The BOP has taken steps at prison facilities across the country, including at facilities like MDC without any reported inmate COVID-19 cases, to prevent the risks of COVID-19 transmission. At MDC, for example, inmates—who unlike inmates at other federal facilities are housed in two-person cells, not dormitories—are "confined to their cells for most of each day." Govt's Supp. Ex. M at 2. Showers are "thoroughly cleaned between each use," and prison staff supervises and provides showers to inmates in smaller "groups of 8." Id. When inmates are permitted to leave their cells for recreation, "[e]very inmate is required to wear masks," which are newly "issued each week," and recreation is only permitted "in groups of approximately 16-18 inmates pursuant to a set schedule" to avoid unnecessary contract. Id. "[T]o ensure that the inmates do not congregate in large groups," MDC staff "feed[s] the inmates every meal in their cells." Id. This is accomplished by summoning "small groups of inmates and hav[ing] them line up six feet apart." Id. At the end of the meal, the process is repeated to collect inmates' trays. Id. Surfaces in common areas are regularly scrubbed and cleaned by orderlies, and all newly admitted inmates are subject to a mandatory 14-day quarantine before joining the prison population. Id. at 2-3. And since May 7, 2020, MDC has expanded COVID-19 testing to test not only staff but also asymptomatic inmates. See Govt's Supp. Ex. N. at 1-2.

/ / /

Although no inmates at MDC have tested positive for COVID-19, see Govt's Supp. Exs. M-N, ECF No. 538-1,[1] and although Singui does not report experiencing any symptoms of COVID-19 himself, or encountering other inmates or MDC staff members with fever or respiratory illnesses, Singui is concerned that he may contract the virus while serving the remaining 44 months of his sentence. See Yates Decl., ¶ 5. Singui has Type 2 diabetes, for which he requires insulin. He also takes medication for high blood pressure and high cholesterol. See PSR ¶ 148; Yates Decl., ¶ 5. According to the United States Centers for Disease Control and Prevention ("CDC"), persons with diabetes are at higher risk of death and serious illness from COVID-19, should they contract the virus. See U.S. Centers for Disease Control and Prevention, "Coronavirus Disease 2019 (COVID-19): People Who Are At Higher Risk" (2020) (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html) (accessed May 12, 2020). As of April 13, 2020, Singui also reports that MDC had not provided him with adequate cleaning supplies or disinfectant beyond the soap he is able to obtain from the commissary. Yates Decl., ¶ 7.

Citing these concerns, Singui submitted a request for compassionate release with the federal Bureau of Prisons ("BOP") on April 14, 2020. To date, BOP has not made a decision on Singui's request. Singui filed this motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) on April 17, 2020. See ECF No. 527 ("Mot."). The government filed an opposition on May 1, 2020. See ECF No. 531 ("Opp."). On May 8, 2020, Singui filed a reply. See ECF No. 537 ("Reply"). The government filed supplemental exhibits on May 11, 2020, see ECF No. 538 ("Govt's Supp. Exs."), to which Singui responded that same day, see ECF No. 539 ("Supp. Resp."). The government also filed statements from several victims who lost their homes, savings, and in one case "only asset" because of

---

[1] One staff person at MDC previously tested positive, but that person was removed has since recovered and was medically cleared to return to work. See Govt's Supp. Ex. M at 1. There are no current reported cases among inmates or staff at MDC. Id.

Singui's fraudulent scheme. See Victims Statements, ECF No. 540. Each victim opposes Singui's motion, and, citing his mendacity and predatory conduct which they encountered first-hand, contends that Singui would pose a serious danger to the community if released. Id.

## II.   LEGAL STANDARD

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA") amended the United States Code to promote the rehabilitation of prisoners and "unwind decades of mass incarceration." See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).

Among other things, the FSA amended the procedures by which defendants can seek sentence reductions through modification. Previously, a defendant could only petition the Director of the Bureau of Prisons ("BOP") for a modified sentence, who could then move the district court at his or her discretion for relief. See U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."). "The BOP Director rarely did so." Rodriguez, 424 F. Supp. 3d at 680 (citing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

Correcting this flaw, the FSA now allows defendants to petition district courts directly for sentence modifications. See 18 U.S.C. § 3582(c)(1)(A)(i). The statute sets forth three requirements: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant [a sentence reduction] only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'" Rodriguez, 424 F. Supp. 3d at 680 (quoting 18 U.S.C. § 3582(c)(1)(A)) (internal citations omitted). Even where these requirements are otherwise met, a court must deny a motion for compassionate release if it

determines that releasing a defendant would pose a "danger to the community." See United States v. Eberhart, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction in sentence under § 3582(c)(1)(A) requires a determination that 'the defendant is not a danger to the safety of any other person or to the community[.]'") (citation omitted).

## III. DISCUSSION

Singui contends he meets the applicable requirements and is entitled to compassionate release. The government opposes on each element. The Court concludes that Singui fails to establish extraordinary and compelling reasons to support his release, or to establish that he is no longer a danger to the community.

### A. Administrative Exhaustion

The government contends that Singui fails to satisfy this element because he moved for compassionate release in this Court before the warden at MDC had ruled on his administrative request, and before 30 days had elapsed since Singui submitted that request. The point is now moot. As of this date, more than 30 days have elapsed since Singui submitted his request for compassionate release on April 14, 2020, and the MDC warden has not yet issued a response. See Notice of Exhaustion, ECF No. 545. The Court accordingly finds that Singui has satisfied his obligation to exhaust his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons and Other Requirements

Singui claims that the COVID-19 pandemic, in combination with his risk factors, establish extraordinary and compelling reasons to grant him compassionate release.

The FSA does not define "what constitutes 'extraordinary and compelling' other than that '[r]ehabilitation of the defendant alone' is insufficient." Rodriguez, 424 F. Supp. 3d at 681 (quoting 28 U.S.C. § 994(t)). The statute only "directs the Sentencing Commission to promulgate 'the criteria to be applied and a list of specific' extraordinary and compelling examples" consistent with the intent of the FSA. Id. The Sentencing Commission has not yet done so. As a result, the only policy statement issued by the

Sentencing Commission related to what counts as a qualifying "extraordinary and compelling condition" predates the FSA's sweeping revisions to the nation's criminal laws. Id. This un-updated policy statement—U.S.S.G. § 1B1.13, relied upon by the government—identifies only four qualifying conditions: (1) a serious medical condition (i.e., that the defendant is either "suffering from a terminal illness" or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care" in prison); (2) the defendant's age in combination with a medical condition (i.e., that the defendant is at least 65 years old, is experiencing deteriorating health, and has served a substantial portion of her sentence); (3) certain family circumstances (i.e., the incapacitation of a spouse); or (4) some other reason "determined by the Director of the [BOP]." See U.S.S.G. § 1B1.13 at cmt. 1.

Since "the Sentencing Commission 'never harmonized its policy statements with the FSA,'" districts courts face a "conundrum." Rodriguez, 424 F. Supp. 3d at 681 (quoting United States v. Brown, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "On the one hand, Congress unequivocally said it wishes to 'increase the use . . . of compassionate release' by allowing district courts to grant petitions 'consistent with applicable policy statements' from the Sentencing Commission" but "[o]n the other hand, the Commission . . . has not made the policy statement for the old regime applicable to the new one." Brown, 411 F. Supp. 3d at 449 (quoting 18 U.S.C. § 3582(c)(1)(A)) (some alternations omitted).

A "growing number of district courts" that have considered this question have "concluded that, in the absence of applicable policy statements, courts 'can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant'" sentence modification. Rodriguez, 424 F. Supp. 3d at 681-82 (quoting Brown, 411 F. Supp 3d at 449); see also, e.g., United States v. Chan, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *5 (N.D. Cal. Mar. 31, 2020) (following Rodriguez and concluding that reasons "other than those delineated in" U.S.S.G. § 1B1.13 could "warrant a reduction in Chan's sentence"); United States v. Wade, No. 99-CR-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020) (quoting same and granting motion for

compassionate release for extraordinary and compelling reasons other than those set forth in U.S.S.G. § 1B1.13); see also United States v. Beck, 425 F. Supp. 3d. 573, 583 (M.D.N.C. 2019) (concluding that courts may "exercise similar discretion as that previously reserved to the BOP Director" to determine extraordinary and compelling circumstances); United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (same); United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). These courts reasoned that Congress passed the FSA—and, more specifically, enabled incarcerated persons to file "direct motions to district courts" for sentence modification—to "increase the use of compassionate release," and determined that "the only way" to give force to that command "is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" Brown, 411 F. Supp. 3d at 451.

The Court agrees with these courts. "[I]f the FSA is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it." Id. at 451.

The question then becomes whether the evidence of Singui's medical condition, in combination with the COVID-19 pandemic, comprise "extraordinary and compelling" reasons that justify a modification to his sentence. Singui contends that they do, both under the "outdated standard" set forth in U.S.S.G. § 1B1.13, and pursuant to the Court's discretion to find such reasons on its own. The government does not dispute that the pandemic and Singui's medical condition may "potentially qualif[y]" him for compassionate release. Instead, the government principally argues that Singui poses a "continuing danger" to the community that renders him ineligible for release.

The Court agrees. First, while the Court is sympathetic to Singui's medical condition and concern about contracting the virus, the Court is not convinced that Singui's Type 2 diabetes is a sufficiently extraordinary or compelling reason to modify his prison sentence, or grant compassionate release, at this time. Although his diabetes may expose Singui to more serious complications from COVID-19 should he contract the virus, there

is little evidence that Singui is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions, see supra § I (discussing steps outlined in Govt's Supp. Exs. M-N), to prevent the virus from reaching and spreading within the prison. Singui merely speculates that MDC's additional interventions, including additional testing, might be inadequate to prevent him from becoming exposed. See Supp. Resp. at 1-2.

This "generalized concern about possible exposure is at this point too speculative to qualify as extraordinary and compelling." United States v. Canada, No. CR 119-014, 2020 WL 2449344 (S.D. Ga. May 12, 2020) (denying diabetic inmate's motion for compassionate release based on COVID-19 concerns, notwithstanding his "greater risk" of experiencing serious complications should he contract the virus, because the inmate's federal facility "only has one active case of COVID-19 in its inmate population"). As the Third Circuit has stated, "the mere existence of COVID-19 in society and the *possibility* that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (emphasis added). Courts in this circuit have likewise declined to find extraordinary and compelling reasons supporting compassionate release in similar circumstances. See, e.g., United States v. Hembry, No. 12-CR-00119-SI-1, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for compassionate release to inmate with diabetes based on COVID-19 risks *inter alia* because the incarcerated movant is "housed at a facility with no reported infections"). The Court does here as well.

Second, even were the Court to find extraordinary and compelling reasons supporting compassionate release, the Court would decline to grant Singui's motion because Singui still poses a danger to the community. Singui's conduct was calculated and took advantage of an economic crisis not unlike the present one to prey on vulnerable homeowners. See Victims Statements, at 1-5. While on bond before trial, Singui continued

-8-

to collect proceeds from his illegal activities in violation of the terms of his original pretrial release order. See ECF Nos. 129, 135. Although Singui now purports to feel remorse for his actions, see Reply Ex. I ("Singui Letter"), at sentencing, Singui declined to take full responsibility for his conduct. See ECF No. 451 at 32-33. The Court does not find that Singui—who has served less than half of his sentence and is not due to be released for another 44 months—would no longer threaten additional victims. For this additional reason, the Court denies Singui's motion. E.g., Hembry, 2020 WL 1821930, at *2 (denying diabetic inmate's COVID-19 based compassionate release motion for the additional reason that inmate still "pose[s] a danger to the community").

IV. CONCLUSION

For the foregoing reasons, Singui's motion is **DENIED**.

**IT IS SO ORDERED.**

DATED: May 18, 2020

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE